*State of Maryland v. Otis Rich*, No. 83, September Term, 2016.  Opinion by Getty, J.

**PETITION FOR WRIT OF ERROR CORAM NOBIS — APPELLATE REVIEW — MOTION FOR RECONSIDERATION — WAIVER OF ARGUMENT**

In response to respondent's petition for writ of error *coram nobis*, the State consistently asserted, in both the *coram nobis* court and the Court of Special Appeals, that the record of respondent's 2001 plea hearing was sufficient to determine that his guilty plea was knowing and voluntary.  The *coram nobis* court denied the petition without a hearing.  The Court of Special Appeals then reviewed the record of the 2001 plea hearing, and determined that the respondent's 2001 guilty plea was not knowing and voluntary.  On a motion for reconsideration, the State asserted, for the first time, that the record of the 2001 plea hearing was inadequate to determine whether the guilty plea was knowing and voluntary, and therefore a remand on this point was necessary.  The Court of Special Appeals denied the motion for reconsideration.

The Court of Appeals held that the Court of Special Appeals did not abuse its discretion in denying the State's motion for reconsideration.  By consistently asserting that the record of the 2001 plea hearing was sufficient to determine whether respondent's guilty plea was knowing and voluntary, and failing to argue that a remand was necessary prior to the Court of Special Appeals issuing its decision, the State effectively waived this argument on appeal.

Circuit Court for Baltimore City
Case Nos. 199252017, 293113001,
802108037
Argued: May 9, 2017

IN THE COURT OF APPEALS

OF MARYLAND

No. 83

September Term, 2016

---

STATE OF MARYLAND

v.

OTIS RICH

---

Barbera, C.J.
Greene,
Adkins,
McDonald,
Watts,
Hotten,
Getty,

JJ.

---

Opinion by Getty, J.

---

Filed: July 14, 2017

*"I am reminded, in this connection, of a story of an old Dutch farmer, who remarked to a companion once that 'it was not best to swap horses when crossing streams.'"*

—Abraham Lincoln, Remarks in Response to Lincoln's Nomination by the National Union League (June 9, 1864)

In June 2009, the respondent, Otis Rich, filed a petition for writ of error *coram nobis* challenging the voluntariness of his 2001 guilty plea to conspiracy to distribute marijuana. In response to the petition, the State asserted that Mr. Rich's claims were without merit and should be denied without a hearing. The *coram nobis* court agreed with the State, and denied Mr. Rich's petition without a hearing.

When Mr. Rich appealed the decision to the Court of Special Appeals, the State asserted for a second time that the record of the 2001 plea hearing was sufficient to establish that the guilty plea was knowing and voluntary. Moreover, the State's primary argument on appeal was that Mr. Rich waived the right to seek *coram nobis* relief by failing to file an application for leave to appeal his 2001 guilty plea. Thus, the State urged the intermediate appellate court to affirm the *coram nobis* court's denial of Mr. Rich's petition without a hearing.

Mr. Rich's appeal was then delayed for five years, during which time this Court decided *State v. Smith*, 443 Md. 572 (2015). In *Smith*, we held that a defendant does not waive the right to seek *coram nobis* relief by failing to file an application for leave to appeal a guilty plea. *Id.* at 595. Following our decision in *Smith*, the Court of Special Appeals lifted the stay on Mr. Rich's appeal, and set the case for consideration in March 2016. At

no point after our decision in *Smith*, or after the Court of Special Appeals lifted the stay on Mr. Rich's appeal, did the State supplement or amend its earlier arguments in its brief to account for the evolution in *coram nobis* jurisprudence that had occurred in the intervening five years since the State filed its initial brief.

The Court of Special Appeals decided Mr. Rich's appeal in August 2016. The intermediate appellate court held, pursuant to *Smith*, that Mr. Rich had not waived his *coram nobis* claim by failing to file an application for leave to appeal his 2001 guilty plea. On the merits of his claim, the Court of Special Appeals determined, based on the record of the 2001 plea hearing, that Mr. Rich's guilty plea was not knowing and voluntary, and therefore the *coram nobis* court erred by denying him relief based on this ground. The Court of Special Appeals then remanded the case for the *coram nobis* court to consider whether Mr. Rich was suffering significant collateral consequences as a result of his convictions.

Following the Court of Special Appeals' decision, the State filed a motion for reconsideration in that court. In its motion, the State argued, for the first time, that the record of the 2001 plea hearing was inadequate for the intermediate appellate court to determine whether Mr. Rich's guilty plea was knowing and voluntary. Thus, the State requested, midstream, that the Court of Special Appeals order a remand for the *coram nobis* court to conduct an evidentiary hearing on the merits of Mr. Rich's claim. The Court of Special Appeals denied the motion for reconsideration, and reissued its opinion.

Before this Court, the State asks us to determine whether the Court of Special Appeals erred by denying its motion for reconsideration requesting a remand on the merits

2

of Mr. Rich's claim. For the reasons that follow, we hold that the Court of Special Appeals did not abuse its discretion in denying the motion, and therefore we affirm.

## BACKGROUND

### A.    *The Guilty Pleas*

On December 29, 1993, Mr. Rich pleaded guilty in the Circuit Court for Baltimore City to possession with intent to distribute a controlled dangerous substance. The circuit court sentenced Mr. Rich to five years of incarceration, all suspended, and eighteen months of supervised probation.

On October 23, 2001, Mr. Rich pleaded guilty in the Circuit Court for Baltimore City to possession with intent to distribute marijuana and conspiracy to distribute marijuana. The plea hearing took place simultaneously with the plea hearing of another, wholly unrelated defendant named Michael Thomas.[1] At the hearing, Mr. Thomas' defense attorney, Tom Kane, qualified both his client and Mr. Rich prior to the circuit court accepting the guilty pleas. Mr. Rich's defense attorney, John Denholm, said very little at the hearing. After explaining to both defendants the rights they were giving up by choosing to plead guilty, Mr. Kane addressed the four potential grounds for appellate review of a guilty plea:

> MR. KANE: The fourth ground has a couple parts. One is whether or not you understand the charge. Mr. Thomas and Mr. Rich, you're both pleading guilty to possession kind of offenses and possession can be either actual possession, meaning it's on a part of you—in your pockets, holding it in your

---

[1] In the opinion below, the Court of Special Appeals referred to Mr. Thomas' defense attorney as "Co-Defendant's Counsel." *Rich v. State*, 230 Md. App. 537, 556–57 (2016). In fact, Mr. Thomas' case was wholly unrelated to Mr. Rich's case.

3

hand like a pen—or constructive possession, meaning that's in the vicinity of where you are, and you are exercising dominion, meaning ownership, and control over it, meaning that if somebody tried to take it, you could stop them, such as my briefcase over on one of the chairs. I'm not touching it in any way, but I'm in constructive possession of that.

Possessing it with the intent to distribute it means you're having the intent to transfer that possession from you to somebody else. That could be giving it away, it could be selling it, as long as the possession transfers. There doesn't have to be any money involved. A gift is a transfer of possession. So that's the possessing it with the intent to give it to somebody else, as opposed to use it all for yourself.

* * *

And, Mr. Rich, you understand you're charged with marijuana and that's another one of those substances that the Legislature says you can't have?

MR. RICH: Yes.

MR. KANE: Is there anything about the charge of possessing it with the intent to distribute it that you don't understand?

MR. RICH: No.

Neither Mr. Kane nor Mr. Denholm explained to Mr. Rich, at the plea hearing, the nature of the charge of conspiracy to distribute marijuana.

After the circuit court found that Mr. Rich's guilty plea was knowing and voluntary, the prosecutor read into the record the statement of facts supporting his plea:

During the course of their observations, the officers observed approximately eight times where persons would hand United States currency to both Mr. Cook and Mr. Rich. The money would be collected on every occasion, and on every occasion, Mr. Cook and Mr. Rich would respond northbound from their location to a house which was later found to be 825 North Collington Avenue, a vacant house. Both were observed to reach into the front window of the house and respond back to the location of the person who would surrender currency to them. Mr. Cook and Mr. Rich were observed to hand unknown objects to these persons, who would accept the objects and walk out of the area.

4

During the course of those observations, Mr. Armistead was observed to be standing with both Mr. Cook and Mr. Rich, and was observed to approach a late-model black Ford pickup truck, who pulled to the side of the street. . . .

Through the information that was received, the observations made, and the actions of Mr. Cook, Mr. Rich, and Mr. Armistead, the officers believed that all three were working together to sell narcotics in the block and were keeping the narcotics in the vacant house at 825 North Collington Avenue.

Based on this statement of facts, the circuit court found Mr. Rich guilty of possession with intent to distribute marijuana and conspiracy to distribute marijuana. The court sentenced Mr. Rich to three years of incarceration, all suspended, and three years of supervised probation.

On April 19, 2002, Mr. Rich pleaded guilty in the Circuit Court for Baltimore City to second-degree assault. The circuit court sentenced Mr. Rich to ten months of incarceration.

On January 9, 2009, Mr. Rich pleaded guilty in the United States District Court for the District of Maryland to conspiracy to distribute cocaine and possession of cocaine with intent to distribute. As part of his plea agreement, Mr. Rich "agreed" that he was a "career offender pursuant to U.S.S.G. §4B1.1."[2] The federal court sentenced Mr. Rich to 188

---

[2] Pursuant to the United States Sentencing Guidelines Manual, §4B1.1(a),

A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

5

months (15 years and 8 months) of incarceration. Mr. Rich is currently serving this sentence at a federal penitentiary.

**B.** ***Coram Nobis Proceedings***

On June 29, 2009, Mr. Rich, acting *pro se*, filed three petitions for writ of error *coram nobis* in the Circuit Court for Baltimore City, challenging each of his three guilty pleas in the circuit court, respectively.[3] Specifically, and of particular relevance to this appeal, Mr. Rich argued, with respect to his 2001 guilty plea to conspiracy to distribute marijuana, that he was never informed of the elements of the conspiracy charge. Therefore, Mr. Rich asserted, his guilty plea to this charge was not knowing and voluntary, in violation of Maryland Rule 4-242(c).[4] Mr. Rich submitted an affidavit and a transcript of the 2001 plea hearing in support of his claims.

On August 10, 2009, the State filed answers to each of Mr. Rich's petitions, requesting that the *coram nobis* court deny each petition without a hearing. On September 1, 2009, Mr. Rich filed responses to the State's answer in each of the three cases, each one

---

[3] Previously, on April 30, 2009, Mr. Rich filed a petition for writ of error *coram nobis* that improperly combined his challenges to both the 1993 guilty plea and the 2002 guilty plea in a single petition. On June 15, 2009, the *coram nobis* court dismissed without prejudice the improperly filed petition.

[4] At the time of Mr. Rich's 2001 guilty plea, Rule 4-242(c) provided, in pertinent part,

> The court may accept a plea of guilty only after it determines, upon an examination of the defendant on the record in open court conducted by the court, the State's Attorney, the attorney for the defendant, or any combination thereof, that (1) the defendant is pleading voluntarily, with understanding of the nature of the charge and the consequences of the plea; and (2) there is a factual basis for the plea.

requesting that the *coram nobis* court vacate his conviction "or in the alternative, conduct an evidentiary hearing."

On February 5, 2010, the *coram nobis* court entered orders in each of the three cases denying Mr. Rich's petitions without a hearing. In each of the orders, the court "assume[d], without deciding," that Mr. Rich was suffering collateral consequences as a result of his guilty plea in the circuit court. In each case, the *coram nobis* court found that Mr. Rich had failed to meet his burden to show that his guilty plea was not knowing and voluntary. Regarding the 2001 guilty plea to conspiracy to distribute marijuana, the *coram nobis* court rejected Mr. Rich's contention that his plea was not knowing and voluntary because he was not informed of the elements of the conspiracy charge. The *coram nobis* court acknowledged that Mr. Rich "was not dictated the elements of conspiracy," but noted that "it is not necessary to disclose the specific elements of each charge on the record for a crime." The *coram nobis* court concluded that "[t]he statement of facts [read at the plea hearing] clearly indicated that two or more persons were combining to commit a criminal or unlawful act, which satisfies the requirement[] of *State v. Priet*," 289 Md. 267 (1981) that the defendant must be aware of the nature of the charge to which he is pleading guilty. Mr. Rich appealed from the denials of his petitions.[5]

C.    *Proceedings in the Court of Special Appeals*

---

[5] On August 2, 2010, the *coram nobis* court issued an order declaring that Mr. Rich's appeals from the court's denials of his petitions were timely filed.

On November 18, 2010, Mr. Rich, acting *pro se*, filed a brief in the Court of Special Appeals. On April 1, 2011, Mr. Rich filed a corrected brief. On August 9, 2011, Benjamin C. Sutley entered his appearance on behalf of Mr. Rich. In October 2011, Mr. Sutley filed a second corrected brief on behalf of Mr. Rich.[6] In his briefs, Mr. Rich argued that the *coram nobis* court erred in denying his petitions because, *inter alia*, his guilty pleas in the circuit court were not knowing and voluntary.

The State filed its brief in the Court of Special Appeals on December 9, 2011. In its brief, the State argued that Mr. Rich was not entitled to *coram nobis* relief for five reasons: 1) Mr. Rich waived any claim of error regarding his guilty pleas by failing to seek leave to appeal from each of them; 2) Mr. Rich's claims of error are barred by laches; 3) Mr. Rich is not suffering any collateral consequences from his convictions in the circuit court; 4) Mr. Rich's pleas in each case were knowing and voluntary; and 5) Mr. Rich's trial counsel was not ineffective for failing to file a motion for modification of sentence in each case. Specifically, regarding the fourth argument, the State asserted, "The records of the 2001 and 2002 plea hearings are sufficient to permit this Court to find that the totality of the circumstances compel the conclusion that both pleas were entered knowingly and voluntarily." Therefore, the State requested that the Court of Special Appeals affirm the *coram nobis* court's denials of Mr. Rich's petitions without a hearing.

---

[6] On October 15, 2013, by order of this Court, Mr. Sutley agreed to an indefinite suspension of his license to practice law in Maryland. *Attorney Grievance Comm'n v. Sutley*, 435 Md. 149 (2013). Mr. Rich did not retain a new lawyer after Mr. Sutley's suspension, so he was unrepresented when the Court of Special Appeals later lifted the stay on his appeal and issued its opinion. Before this Court, Mr. Rich was represented by counsel.

On October 27, 2014, the Court of Special Appeals ordered that Mr. Rich's appeal be stayed pending a decision by this Court in *State v. Graves*, 437 Md. 637 (2014) (granting certiorari). This Court granted certiorari in *Graves* on April 18, 2014 to determine whether § 8-401 of the Criminal Procedure Article ("CP") applies retrospectively. CP § 8-401, enacted in 2012, provides that "[t]he failure to seek an appeal in a criminal case may not be construed as a waiver of the right to file a petition for writ of error coram nobis." On December 5, 2014, this Court dismissed *Graves* as moot prior to oral argument. *State v. Graves*, 441 Md. 61 (2014).

Meanwhile, on July 18, 2014, this Court granted certiorari in *State v. Smith* to determine whether the *coram nobis* petitioner in that case had waived her right to seek *coram nobis* relief by failing to file an application for leave to appeal her conviction, and whether the petitioner had satisfied her burden of proving that her guilty plea was not knowing and voluntary. 443 Md. at 576. We heard oral arguments in *Smith* on December 10, 2014. On December 12, 2014, the Court of Special Appeals ordered that Mr. Rich's appeal remain stayed pending a decision by this Court in *Smith*.

This Court issued its opinion in *Smith* on July 13, 2015. On December 8, 2015, the Court of Special Appeals issued an order lifting the stay in Mr. Rich's appeal, requesting that the Appellee's (State's) Brief be filed on or before January 15, 2016, and scheduling the case for consideration in March 2016. In response to this order, the State informed the Court of Special Appeals that it had already filed its Appellee's Brief in December 2011, and did not request to amend or supplement that previously filed brief.

9

On August 30, 2016, the Court of Special Appeals issued its decision in Mr. Rich's appeal. In a reported opinion, the intermediate appellate court held, pursuant to *Smith*, that Mr. Rich's claims for *coram nobis* relief were not waived or barred by laches. Addressing the merits of his claims, the court held that Mr. Rich's 1993 and 2002 guilty pleas were knowing and voluntary. However, reviewing the 2001 guilty plea for conspiracy to distribute marijuana, the intermediate appellate court held that the plea colloquy was insufficient to ensure that Mr. Rich understood the nature of the conspiracy charge. The Court of Special Appeals noted that the *coram nobis* "court decided Mr. Rich's *coram nobis* petitions without a hearing, so there is no testimony apart from the plea hearing itself from which we can evaluate Mr. Rich's understanding of the charges." Therefore, the intermediate appellate court concluded that Mr. Rich's 2001 guilty plea was not knowing and voluntary. Finally, the Court of Special Appeals noted that the *coram nobis* court did not address whether Mr. Rich is suffering significant collateral consequences from his convictions, which Mr. Rich would have to show in order to receive *coram nobis* relief. The intermediate appellate court noted that this issue is one that the *coram nobis* "court should resolve in the first instance." Accordingly, the Court of Special Appeals vacated the judgment of the *coram nobis* court with respect to the 2001 guilty plea, and remanded to the *coram nobis* court to consider the issue of collateral consequences.

On September 16, 2016, the State filed a motion for reconsideration of the Court of Special Appeals' opinion. In its motion, the State requested, for the first time, that the Court of Special Appeals

10

remand this matter to the [*coram nobis*] court for a hearing on [Mr.] Rich's petition where [Mr.] Rich and the State have an opportunity to present evidence relevant to the *coram nobis* court's consideration of whether, in fact, [Mr.] Rich was unaware of the nature of the conspiracy charge prior to pleading guilty to it in 2001.

Contrary to the State's previous assertions in the *coram nobis* court and in its brief to the Court of Special Appeals, the State now asserted,

> Because the [*coram nobis*] court did not hold a hearing on [Mr.] Rich's *coram nobis* petitions, the record before [the Court of Special Appeals] was inadequate to permit the Court to resolve [Mr.] Rich's *coram nobis* claim that he was unaware of the nature of the conspiracy charge that he pled guilty to in 2001.

The State did not seek reconsideration of the Court of Special Appeals' holdings that Mr. Rich's claims were not waived or barred by laches, or that a remand was required on the issue of whether Mr. Rich was facing collateral consequences from his convictions.

On November 1, 2016, the Court of Special Appeals denied the State's motion for reconsideration, withdrew its original opinion, and filed a new reported opinion. In the new opinion, the Court of Special Appeals added a footnote responding to the State's belated request for a remand on whether Mr. Rich's 2001 plea was knowing and voluntary:

> The State did not ask for a remand on this point or proffer evidence it would have put on at a hearing, had there been one, but argued in its brief that we should infer Mr. Rich's understanding of the charges from his acknowledgement that counsel "help[ed] him understand what the trial would be all about and guid[ed] [him] in coming to th[e] decision" to plead guilty.

*Rich v. State*, 230 Md. App. 537, 559 n.6 (2016) (alterations in original).

On November 15, 2016, the State petitioned this Court for a writ of certiorari, which this Court granted on January 9, 2017. *State v. Rich*, 451 Md. 251 (2017). The State presents one question for our review:

> Where the circuit court denied [Mr.] Rich's *coram nobis* petition challenging his 2001 conviction without a hearing, in light of *Smith v. State*, 443 Md. 572 (2015) (Part II), did the Court of Special Appeals err in not remanding this matter to the Circuit Court for Baltimore City for a hearing to determine whether [Mr.] Rich, in fact, was unaware of the nature of a conspiracy charge at the time of his plea?

## STANDARD OF REVIEW

In reviewing the Court of Special Appeals' denial of the State's motion for reconsideration, "our standard for review is whether the Court of Special Appeals abused its discretion in denying the motion." *Byrum v. Horning*, 360 Md. 23, 33 (2000).

## DISCUSSION

A writ of error *coram nobis* "is an 'extraordinary remedy' justified 'only under circumstances *compelling such action to achieve justice*.'" *Smith*, 443 Md. at 597 (quoting *Skok v. State*, 361 Md. 52, 72 (2000)). "[C]oram nobis should be available to raise fundamental errors in attempting to show that a criminal conviction was invalid under circumstances where no other remedy is presently available and where there were sound reasons for the failure to seek relief earlier." *Id.* (quoting *Skok*, 361 Md. at 72–73).

In *Skok*, this Court outlined five requirements for obtaining *coram nobis* relief: First, "the grounds for challenging the criminal conviction must be of a constitutional, jurisdictional or fundamental character." *Skok*, 361 Md. at 78 (citing *United States v. Morgan*, 346 U.S. 502, 512 (1954)). Second, "a presumption of regularity attaches to the

criminal case, and the burden of proof is on the coram nobis petitioner." *Id.* (citing *Morgan*, 346 U.S. at 512). Third, "the coram nobis petitioner must be suffering or facing significant collateral consequences from the conviction." *Id.* at 79. Fourth, "[b]asic principles of waiver are applicable to issues raised in coram nobis proceedings. Similarly, where an issue has been finally litigated in a prior proceeding, and there are no intervening changes in the applicable law or controlling case law, the issue may not be relitigated in a coram nobis action." *Id.* (citation omitted) (citing *Morgan*, 346 U.S. at 512). Fifth, "one is not entitled to challenge a criminal conviction by a coram nobis proceeding if another statutory or common law remedy is then available." *Id.* at 80.

In *Smith*, this Court considered whether CP § 8-401 applies retrospectively to petitions for *coram nobis* relief filed prior to the statute's effective date of October 1, 2012. *Smith*, 443 Md. at 588. CP § 8-401 provides that "[t]he failure to seek an appeal in a criminal case may not be construed as a waiver of the right to file a petition for writ of error coram nobis." After examining the statute, its legislative history, and this Court's caselaw on the nature of *coram nobis* relief, the *Smith* Court held that the statute does apply retrospectively to all cases that were pending in court when the statute became effective. *Smith*, 443 Md. at 595. In this case, the Court of Special Appeals applied this holding to Mr. Rich's petitions, which were pending in that court on the statute's effective date, and held that his claims for *coram nobis* relief were not waived. *Rich*, 230 Md. App. at 549. The State does not contest this portion of the Court of Special Appeals' decision.

The second issue in *Smith* was whether the *coram nobis* petitioner in that case had satisfied her burden to show that her guilty plea was not knowing and voluntary. *Smith*,

13

443 Md. at 649. To address this issue, the *Smith* Court clarified the distinction between challenging a guilty plea on direct appeal versus doing so through the "extraordinary remedy" of *coram nobis* relief:

> *Daughtry* was an appeal of a conviction after a plea, not an appeal of a ruling on coram nobis. Thus, as this Court expressly framed it, the issue in *Daughtry* was not just whether the defendant understood the nature of the charges, but also whether the trial court was correct "in determining whether [the] defendant understood the nature of the charges[.]" This distinction is vital, as, in a coram nobis case such as this one, the only issue is whether the defendant understood the nature of the charges—**regardless** of whether the trial court could determine as much. By contrast, in an appeal of a conviction after a plea such as the one in *Daughtry*, the ultimate issue depends on what the trial court could find, and that issue is necessarily limited to what happened at the plea hearing, which includes the entirety of what the trial court could find. Simply put, here, it does not matter what the trial court could find; what matters is whether Smith's lawyer told Smith about the nature of the charges.

*Id.* at 653 (alterations in original) (distinguishing *State v. Daughtry*, 419 Md. 35 (2011)). In other words, a defendant can successfully challenge a guilty plea on direct appeal by showing that the trial court did not follow the procedural requirements of Maryland Rule 4-242(c), which includes finding, on the record, that "the defendant is pleading voluntarily, with understanding of the nature of the charge and the consequences of the plea." However, when challenging a guilty plea through a petition for writ of error *coram nobis*, the defendant is only entitled to relief if he or she can establish that, at the time of the plea, he or she was not, *in fact*, "pleading voluntarily, with understanding of the nature of the charge and the consequences of the plea," regardless of whether the trial court satisfied the procedural requirements of the Rule.

14

Because of this distinction between what a defendant must show to successfully challenge a guilty plea on direct appeal versus through a *coram nobis* petition, the *Smith* Court noted a parallel distinction regarding the evidence that may be considered in each circumstance:

> Based on the analysis above, we hold that a lawyer's testimony at a coram nobis hearing concerning having advised a defendant prior to the guilty plea of the nature of the charges against him or her is admissible. Such testimony may be considered in a coram nobis proceeding in determining whether a defendant pled "voluntarily, with understanding of the nature of the charge" within the meaning of Maryland Rule 4–242(c). . . . Matters beyond the scope of the record of the guilty plea hearing are already, by nature of the proceeding, relevant to the trial court at a coram nobis proceeding. And, most importantly, a coram nobis proceeding's purpose is not to determine based on the record whether the trial court erred at the time of a guilty plea, but instead to determine whether a petitioner indeed knowingly and voluntarily pled guilty.

*Id.* at 654. Thus, when challenging a guilty plea on direct appeal, the reviewing court is limited to the record of the plea hearing itself. But, when challenging a guilty plea through a petition for writ of error *coram nobis*, the *coram nobis* court may consider additional evidence, such as the trial lawyer's testimony regarding his or her conversations with the defendant explaining the terms of the plea, in addition to the record of the plea hearing itself.

The State draws upon our holding in *Smith* to argue that the Court of Special Appeals abused its discretion in this case when it denied the State's motion for reconsideration. The State contends that, based on our holding in *Smith*, "the Court of Special Appeals erred when it limited its review" of Mr. Rich's *coram nobis* claims "to the transcript of the plea hearings." The State also argues that the Court of Special Appeals

15

incorrectly undertook a *de novo* review of the *coram nobis* court's ruling, when the correct

standard of review for the equitable remedy of *coram nobis* relief is abuse of discretion.

Moreover, the State asserts that it "can hardly be faulted for failing to anticipate" changes

in the law of *coram nobis* while Mr. Rich's case sat dormant in the Court of Special Appeals

for five years, and for failing to request a remand on the merits in the event that the court

rejected its arguments concerning waiver and laches. Finally, the State contends that, by

noting that the State did not "proffer evidence it would have put on at a hearing, had there

been one," *see Rich*, 230 Md. App. at 559 n.6, the Court of Special Appeals "improperly

shifted the burden to the State to disprove [Mr.] Rich's claim that he was unaware of the

nature of the conspiracy charge when he entered his plea." Therefore, the State requests

that we vacate the decision of the Court of Special Appeals and remand Mr. Rich's petition

to the *coram nobis* court for a hearing on his claim that his 2001 guilty plea was not

knowing and voluntary.

Mr. Rich responds that the Court of Special Appeals properly reviewed his *coram

nobis* claims based on the record before it, correctly determined that his 2001 guilty plea

was not knowing and voluntary, and rightfully denied the State's motion for

reconsideration requesting a remand on this point. Mr. Rich argues that the standard of

review for *coram nobis* claims should be the same standard that is applied to other

postconviction proceedings: factual findings are upheld unless clearly erroneous, while

legal conclusions are reviewed *de novo*. *See, e.g., Arrington v. State*, 411 Md. 524, 551

(2009) ("Although reviewing factual determinations of the post-conviction court under a

clearly erroneous standard, we make an independent determination of relevant law and its

16

application to the facts." (quoting *State v. Adams*, 406 Md. 240, 255 (2008))). Mr. Rich contends that the Court of Special Appeals properly applied this standard to his claims, and correctly held that Mr. Rich "met his burdens to show a constitutional deficiency in his 2001 guilty plea, and to rebut the presumption of regularity with regard to that guilty plea." *See Rich*, 230 Md. App. at 559.

Furthermore, Mr. Rich notes that the State, which was a party to *Smith*, had over a year—between when this Court decided *Smith* and when the Court of Special Appeals issued its original opinion in this case—in which it could have amended or supplemented its original brief filed in 2011. Additionally, the State had eight months to supplement its argument from the time the Court of Special Appeals lifted the stay, and five months from the time it set this case for consideration. Because the State failed to request a remand on whether Mr. Rich's 2001 guilty plea was knowing and voluntary at any point *before* the Court of Special Appeals issued its original opinion in this case, Mr. Rich asserts that the State cannot make such a request for the first time in a motion for reconsideration. Therefore, Mr. Rich concludes that the Court of Special Appeals did not abuse its discretion in denying the State's motion for reconsideration and belated request for a remand.

The State misinterprets our holding in *Smith*. To reiterate, *Smith* held

> that a lawyer's testimony at a coram nobis hearing concerning having advised a defendant prior to the guilty plea of the nature of the charges against him or her is admissible. Such testimony **may be considered** in a coram nobis proceeding in determining whether a defendant pled "voluntarily, with understanding of the nature of the charge" within the meaning of Maryland Rule 4–242(c).

17

*Smith*, 443 Md. at 654 (emphasis added). As Mr. Rich notes, "The State misconstrues this holding to *require*, rather than *allow*, a lawyer's testimony at a *coram nobis* hearing." We agree.

This Court made clear in *Smith* that a *coram nobis* challenge to a guilty plea is fundamentally different from a challenge on direct appeal, and therefore the evidence that may be considered in each circumstance is correspondingly different as well. Specifically, while a challenge on direct appeal is limited to the record of the plea hearing itself, a *coram nobis* challenge can also include testimony from the defendant's trial counsel concerning whether counsel discussed the nature of the charges and the terms of the plea with the defendant. However, the *Smith* Court did not state, nor imply, that such testimony *must* be considered in a *coram nobis* proceeding.

In this case, the State requested that the *coram nobis* court deny Mr. Rich's petitions without a hearing. In the Court of Special Appeals, the State insisted that the record of Mr. Rich's 2001 guilty plea was sufficient for the court to decide that the plea was knowing and voluntary, and requested that the court make such a decision based on that record. Unlike in *Smith*, there was no testimony from Mr. Rich's trial counsel concerning his discussions with Mr. Rich regarding the 2001 guilty plea, because there was no *coram nobis* hearing at which counsel could have testified. And, there was no *coram nobis* hearing on the 2001 guilty plea because the *coram nobis* court acceded to the State's request to deny Mr. Rich's petitions *without a hearing*. Under these circumstances, where the State repeatedly asserted that the record of the 2001 plea hearing itself was sufficient to make a determination on whether the guilty plea was knowing and voluntary, and the

18

*coram nobis* court made such a determination without holding an evidentiary hearing, and the State did not request a remand for an evidentiary hearing on this point while the case was on appeal, the Court of Special Appeals did not err in limiting its review of Mr. Rich's claims to the record of the 2001 plea hearing.

Furthermore, we disagree with the State's contention that the Court of Special Appeals "improperly shifted the burden to the State to disprove [Mr.] Rich's claim that he was unaware of the nature of the conspiracy charge when he entered his plea." To the contrary, the intermediate appellate court expressly stated in its opinion that Mr. Rich "**met his burdens** to show a constitutional deficiency in his 2001 guilty plea, and to rebut the presumption of regularity with regard to that guilty plea." *Rich*, 230 Md. App. at 559 (emphasis added). Thus, we read the reference in the Court of Special Appeals' footnote to the State's failure to "proffer evidence it would have put on at a hearing, had there been one," *see id.* at 559 n.6, as merely providing an additional reason, beyond those we have already discussed, why that court did not exercise its discretion to order a remand on that point when none had been previously requested by the parties. While the State was not required to make such a proffer in order to receive a remand on the merits of Mr. Rich's challenge to the 2001 guilty plea, doing so may have given the intermediate appellate court a reason to order a remand when it previously had no reason to do so. Pointing out the State's failure to provide any basis for why a remand was suddenly necessary, when the State had consistently maintained the contrary position, does not equate to "improperly shift[ing] the burden to the State to disprove" Mr. Rich's claims.

19

Next, we address the parties' contentions regarding the proper standard of review for the denial of a petition for writ of error *coram nobis*. We note that, although neither party sought certiorari on whether the Court of Special Appeals applied the proper standard of review, this issue was briefed by both parties and is properly before us because it must be resolved in order to determine whether the intermediate appellate court abused its discretion in denying the State's motion for reconsideration. In other words, in order to determine whether the Court of Special Appeals properly reviewed the *coram nobis* court's denial of Mr. Rich's petition, we must determine what standard of review the intermediate appellate court should have applied, and whether it applied that standard correctly. The State argues that the standard of review should be abuse of discretion, primarily because *coram nobis* relief is an equitable remedy. Mr. Rich argues that the standard of review is the same as in other postconviction proceedings: findings of fact are upheld unless clearly erroneous, while legal determinations are reviewed *de novo*. In short, they are both right.

No reported opinion in Maryland has ever defined the standard of review to be applied to *coram nobis* proceedings. Several recent unreported opinions in the Court of Special Appeals have borrowed the standard of review from postconviction proceedings under the Maryland Postconviction Procedure Act. *See, e.g., Crawley v. State*, No. 1634, Sept. Term, 2014, 2017 WL 475843, at *3 (Md. Ct. Spec. App. Feb. 6, 2017) (quoting *Arrington*, 411 Md. at 551–52); *Collins v. State*, No. 0503, Sept. Term, 2015, 2017 WL 35491, at *3 (Md. Ct. Spec. App. Jan. 4, 2017) (same); *Navarro v. State*, No. 0613, Sept. Term, 2015, 2016 WL 3460228, at *4 (Md. Ct. Spec. App. June 22, 2016) (same); *Salliey v. State*, No. 1698, Sept. Term, 2014, 2016 WL 1622887, at *2 (Md. Ct. Spec. App. Apr.

20

25, 2016) (same). Other recent unreported opinions from that court opted to apply the abuse of discretion standard instead. *See, e.g.*, *Lombardos v. State*, No. 1338, Sept. Term, 2012, 2015 WL 7356491, at \*5 (Md. Ct. Spec. App. Nov. 19, 2015); *Carter v. State*, No. 1165, Sept. Term, 2013, 2016 WL 856854, at \*3 (Md. Ct. Spec. App. Mar. 3, 2016) (quoting *Lombardos*).

Courts in other states are similarly divided on the proper standard of review for *coram nobis* proceedings. Tennessee applies an abuse of discretion standard. *See State v. Workman*, 111 S.W.3d 10, 18 (Tenn. Crim. App. 2002). In Arkansas, "[t]he standard of review of an order entered by the trial court on a petition for writ of error coram nobis is whether the trial court abused its discretion in granting or denying the writ." *Watson v. State*, 510 S.W.3d 248, 251 (Ark. 2017). But, "[t]he trial court's findings of fact, on which it bases its decision to grant or deny the petition for writ of error coram nobis, will not be reversed on appeal unless they are clearly erroneous or clearly against the preponderance of the evidence." *Id.* In New Hampshire, the reviewing court will "accept the trial court's factual findings unless they lack support in the record or are clearly erroneous, but review the trial court's legal conclusions *de novo*." *State v. Santamaria*, 157 A.3d 409, 411 (N.H. 2017) (borrowing standard of review from *habeas corpus* proceedings). West Virginia employs a mixed standard of review for *coram nobis* proceedings: "We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review." *State v. Hutton*, 776 S.E.2d 621, 624 (W. Va. 2015) (quoting *State v. Allen*, 539 S.E.2d 87, 93 (W. Va. 1999)).

21

Turning to the federal courts for guidance, we find more division. The First, Third, Sixth, and Ninth Circuits "afford de novo review to the district court's legal conclusions and clear-error review to its findings of fact." *United States v. George*, 676 F.3d 249, 256 (1st Cir. 2012); *see United States v. Orocio*, 645 F.3d 630, 635 (3d Cir. 2011); *United States v. Johnson*, 237 F.3d 751, 755 (6th Cir. 2001); *Hirabayashi v. United States*, 828 F.2d 591, 594 (9th Cir. 1987); *see also United States v. Camacho-Bordes*, 94 F.3d 1168, 1173 (8th Cir. 1996) ("In coram nobis cases, we review the district court's legal conclusions de novo."). The Fourth and Eleventh Circuits, on the other hand, "review the district court's ultimate decision to deny the writ for abuse of discretion." *United States v. Akinsade*, 686 F.3d 248, 252 (4th Cir. 2012) (internal quotation marks omitted); *see Alikhani v. United States*, 200 F.3d 732, 734 (11th Cir. 2000). And, in the Second and Fifth Circuits, a mixed standard of review (similar to that used in West Virginia) applies: "We review *de novo* the issue of whether the district court applied the proper legal standard, but we review the district court's ultimate decision to deny the writ for 'abuse of discretion.'" *Fleming v. United States*, 146 F.3d 88, 90 (2d Cir. 1998); *see Santos-Sanchez v. United States*, 548 F.3d 327, 330 (5th Cir. 2008).

Seeing as our survey of other jurisdictions on this issue yields inconclusive results, we return to this Court's pronouncement in *Skok* that *coram nobis* relief is an "extraordinary remedy" that should be allowed "only under circumstances compelling such action to achieve justice." *Skok*, 361 Md. at 72 (quoting *Morgan*, 346 U.S. at 511). Because of the "extraordinary" nature of this remedy, we deem it appropriate for appellate courts to review the *coram nobis* court's decision to grant or deny the petition for abuse of

22

discretion. However, in determining whether the ultimate disposition of the *coram nobis* court constitutes an abuse of discretion, appellate courts should not disturb the *coram nobis* court's factual findings unless they are clearly erroneous, while legal determinations shall be reviewed *de novo*.

Now we must determine whether the Court of Special Appeals, in reviewing the *coram nobis* court's denials of Mr. Rich's petitions, properly employed the standard we have just articulated. The intermediate appellate court (understandably, based on the lack of uniformity addressing the standard of review in *coram nobis* cases) did not articulate precisely this standard when reviewing Mr. Rich's claims. Instead, the Court of Special Appeals purported to utilize the standard of review generally applicable to claims of ineffective assistance of counsel: "we will not disturb the circuit court's factual findings unless they are clearly erroneous. We will, however, exercise our own independent judgment as to the reasonableness of counsel's conduct and any prejudice that resulted." *Rich*, 230 Md. App. at 553 (citing *State v. Prado*, 448 Md. 664, 678–80 (2016)). The Court of Special Appeals did not state that the ultimate decision of the *coram nobis* court in granting or denying the requested relief is reviewed for abuse of discretion.

But, in evaluating Mr. Rich's 2001 guilty plea, the intermediate appellate court deferred to the factual findings of the *coram nobis* court, and reviewed its legal conclusions *de novo*. The Court of Special Appeals determined, based on this Court's case law, that the *coram nobis* court erred in ruling that the 2001 plea colloquy was sufficient to ensure that Mr. Rich understood the nature of the conspiracy charge to which he was pleading guilty. *Id.* at 558. Next, the Court of Special Appeals concluded that Mr. Rich had "met

23

his burdens to show a constitutional deficiency in his 2001 guilty plea, and to rebut the presumption of regularity with regard to that guilty plea." *Id.* at 559. Based on this conclusion, the intermediate appellate court ordered a limited remand for the *coram nobis* court to consider whether Mr. Rich was suffering significant collateral consequences from his convictions, which the *coram nobis* court had "assumed, without deciding." *Id.* at 559–60.

Although the Court of Special Appeals did not indicate that the *coram nobis* court's denial of Mr. Rich's petition challenging his 2001 guilty plea constituted an abuse of discretion, the intermediate appellate court concluded that the lower court committed an error of law in ruling that the 2001 plea colloquy was sufficient to ensure that Mr. Rich understood the nature of the conspiracy charge. As such, the Court of Special Appeals held that Mr. Rich's 2001 guilty plea was not knowing and voluntary. The involuntariness of a guilty plea is an error "of a constitutional, jurisdictional or fundamental character" that qualifies for *coram nobis* relief. *Skok*, 361 Md. at 78; *see also id.* at 80–81 ("[T]he courts have consistently held that the scope of a coram nobis proceeding encompasses issues concerning the voluntariness of a guilty or nolo contendere plea, and whether the record shows that such plea was understandingly and voluntarily made[.]"). Thus, the *coram nobis* court necessarily abused its discretion by denying Mr. Rich's petition on this ground. Therefore, even if the Court of Special Appeals did not articulate the proper standard of review in reaching its conclusion, its denial of the State's motion for reconsideration requesting a remand on this point was proper, and thus was not an abuse of discretion by the intermediate appellate court.

24

Finally, we address the State's contention that it "can hardly be faulted for failing to anticipate" changes in the law of *coram nobis* while Mr. Rich's case "sat dormant" in the Court of Special Appeals for five years, and for failing to request a remand on the merits of his claim in the event that the court rejected the State's arguments concerning waiver and laches. In short, we disagree. As Mr. Rich notes, the State, which was a party to *Smith*, had over a year—between when this Court decided *Smith* and when the Court of Special Appeals issued its original opinion in this case—in which it could have amended or supplemented its original brief filed in 2011. Additionally, the State had eight months to supplement its argument from the time the Court of Special Appeals lifted the stay, and five months from the time it set this case for consideration.

Furthermore, when the Court of Special Appeals requested that the State file its brief on or before January 15, 2016, so that the case could be set for consideration in March 2016, the State responded by informing the court that it had already filed its brief in December 2011. In its Reply Brief to this Court, the State informs us that it did not request additional briefing when the Court of Special Appeals lifted the stay because, at the time, Mr. Rich "was unrepresented by counsel and" his appeal "had already been delayed for four years." Additionally, the State argues that, at the time it filed its brief in December 2011, Mr. "Rich's *coram nobis* claims were waived as a matter of law and a hearing was unnecessary." However, when this Court's decision in *Smith* made clear that Mr. Rich's *coram nobis* claims were not "waived as a matter of law," the State made no effort to supplement or amend its earlier argument in order to reflect this holding.

25

We conclude that, by failing to request a remand on the merits of Mr. Rich's claim in either the *coram nobis* court or the Court of Special Appeals, even after this Court decided *Smith*, and by consistently asserting that a remand on the merits was *not* necessary to resolve Mr. Rich's claims, the State effectively waived any argument that a remand on the merits was, in fact, necessary. *See Hobby v. State*, 436 Md. 526, 542 (2014) ("[A] question not presented or argued in an appellant's brief is waived or abandoned and is, therefore, not properly preserved for review." (quoting *State v. Jones*, 138 Md. App. 178, 230 (2001) (alteration in original), *aff'd*, 379 Md. 704 (2004))). Therefore, where the State first presented its argument that a remand was necessary in a motion for reconsideration in the Court of Special Appeals, we hold that the intermediate appellate court did not abuse its discretion in denying the motion.

## CONCLUSION

We hold that the Court of Special Appeals did not abuse its discretion in denying the State's motion for reconsideration. Accordingly, the judgment of the Court of Special Appeals is affirmed.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

26